UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO CIRIA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 4:23-cv-02796-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

On October 16, 2023, Defendants City and County of San Francisco, Arthur Gerrans, James Crowley, and Nicholas J. Rubino filed a motion to dismiss Plaintiffs' first amended complaint.

On January 18, 2024, the Court held a hearing, and having considered the parties' arguments and the relevant legal authority, GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

## I.　BACKGROUND

On June 6, 2023, Plaintiffs Pedro Ciria and Yojana Paiz filed this lawsuit alleging loss of familial association under 42 U.S.C. § 1983, negligent infliction of emotional distress, and intentional infliction of emotional distress arising from the wrongful arrest and incarceration of father and partner Joaquin Ciria[1].

### A.　Conviction of Joaquin Ciria

On March 25, 1990, Felix Bastarrica was shot and killed in an alleyway in San Francisco.

---

[1] Joaquin Ciria filed his own lawsuit, which is also before the undersigned. *Ciria v. City and County of San Francisco,* 22-cv-07510-KAW. All references to filings in that case will appear as "J.C. Dkt. __." To avoid confusion with Plaintiff Pedro Ciria, the Court will refer to the elder Ciria as "Joaquin."

(First Am. Compl., "FAC," Dkt. No. 23 ¶ 13.)  Following the murder, rumors spread that Joaquin was responsible, and, after a short period of time, he voluntarily spoke with Defendants Arthur Gerrans and James Crowley, who were the San Francisco Police Department inspectors \ investigating the case. (FAC ¶ 14.)  Joaquin denied being involved in the murder, and he explained that, on the night of the murder, he had been driven around by a man named George Varela before being dropped off at home. (FAC ¶ 15.) Joaquin offered to help the inspectors, including by giving them Varela's physical description and that of his car, as well as his contact information. (FAC ¶ 16.)  Around this time, Plaintiffs allege that Gerrans and Crowley had determined that Joaquin was their primary suspect, and they did not meaningfully investigate any other suspects. (FAC ¶ 17.)

Gerrans and Crowley then interviewed Varela, who was an 18-year-old drug addict. (FAC ¶ 18.) Varela first supported Joaquin's alibi by saying they had been driving in his white Monte Carlo earlier that evening, they had gone to an arcade, and then he drove Joaquin home. (FAC ¶ 19.)  Plaintiffs claim that after the inspectors pressured Varela to implicate Joaquin, including by threatening to charge Varela with the murder, Varela told the inspectors that he had driven Joaquin to the alleyway where Bastarrica was killed, and that Joaquin was the shooter. (FAC ¶¶ 18-21.) The statements Varela made during this interview in part led to the arrest and charging of Joaquin on April 19, 1990. (FAC ¶ 23.)

Plaintiffs claim Gerrans and Crowley also exerted undue influence on other witnesses involved in the investigation, including two eyewitnesses to the shooting, Kenneth Duff and Kathleen Guevara. (FAC ¶¶ 24-31.) This included pressuring Duff and Guevara to identify Joaquin even where they were uncertain. *See ids.* Both witnesses later testified at Joaquin's criminal trial that he was the killer. (FAC ¶ 31.)

In addition, Plaintiffs claim Gerrans and Crowley's investigation uncovered evidence that supported Joaquin's innocence, which they improperly ignored. (FAC ¶¶ 32-46.)  This included inconsistencies between Joaquin's appearance and that of the shooter the day of the murder, including his clothing and hairstyle, as well as the timing of when Joaquin was at certain locations the day of the shooting. (FAC ¶¶ 33-34.)

The investigation also led Gerrans and Crowley to interview Plaintiff Yojana Paiz, who

2

told them that the night of the murder, Joaquin had arrived at home after being out with Varela and was spending time with her when the murder was alleged to have occurred. (FAC ¶ 38.) At the time, Paiz was in a romantic relationship with Joaquin Ciria, and had given birth to their son, Plaintiff Pedro Ciria, prior to Joaquin's arrest. (FAC ¶¶ 80–82.)

Joaquin was convicted at his criminal trial in part due to the testimony of Varela, Duff, and Guevara. (FAC ¶¶ 47, 53.) In exchange for his testimony, Varela was provided with leniency in unrelated criminal prosecutions and housing accommodations. (FAC ¶¶ 55-57.) And Guevara received a cash payment after the trial. (FAC ¶ 58.)

### B. Plaintiffs' Relationship with Joaquin Ciria

Plaintiff Paiz began a romantic relationship with Joaquin Ciria in May 1989. (FAC ¶ 80.) They moved in together shortly thereafter and "were each other's significant other." *Id*. They discussed getting married. *Id*. Paiz became pregnant, and Plaintiff Pedro Ciria was born in February 1990. (FAC ¶ 81.) Two months later, on April 19, 1990, Joaquin Ciria was arrested. *Id*. ¶ 82.

Following his arrest, Plaintiffs' interactions with Joaquin consisted of visiting the various institutions at which he was incarcerated. (FAC ¶¶ 82-86, 89-90.) The strain of only being able to interact with him while he was incarcerated, sometimes far from where Plaintiffs lived, took an emotional toll. (FAC ¶ 87.) Pedro missed out on having his father present for milestones in his life, while Paiz and Joaquin's romantic relationship ended in 1996. (FAC ¶¶ 89-90.)

### C. Joaquin Ciria's conviction was vacated.

On January 19, 2021, Joaquin filed a petition for writ of *habeas corpus* in the San Francisco Superior Court that focused on the allegedly false testimony given at his criminal trial in addition to new evidence discovered after the trial. (FAC ¶¶ 63, 65.) The San Francisco District Attorney's Office submitted two returns to the petition and admitted that Joaquin's conviction rested on false testimony and evidence. (FAC ¶¶ 64-65.) On April 18, 2022, Joaquin's conviction was vacated, and he was released from prison on April 20, 2022. (Compl., J.C. Dkt. No. 1 ¶ 3.)

### D. Procedural Background

This case follows Joaquin's related civil rights case pending before this Court. *See Ciria v.*

*City and County of San Francisco,* 22-cv-07510-KAW.

As discussed above, this case was filed by Joaquin's then-girlfriend and his son. Plaintiffs presented their government tort claims on October 17, 2022, and the City and County of San Francisco denied them on December 7, 2022. (FAC ¶ 3.) Plaintiffs filed the first amended complaint on October 2, 2023, which alleged three causes of action: loss of familial association under § 1983, intentional infliction of emotional distress, and negligent infliction of emotional distress.

On October 16, 2023, Defendants filed a motion to dismiss. (Defs.' Mot., Dkt. No. 26.) On November 2, 2023, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 30.) On November 14, 2023, Defendants filed a reply. (Defs.' Reply, Dkt. No. 31.)

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of

1  a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also*

2  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of

3  law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a

4  claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more

5  than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts

6  that are merely consistent with a defendant's liability, it stops short of the line between possibility

7  and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

8  557) (internal citations omitted).

9  Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no

10 request to amend is made "unless it determines that the pleading could not possibly be cured by

11 the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

12 omitted).

13     **B.**    **Request for Judicial Notice**

14 As a general rule, a district court may not consider any material beyond the pleadings in

15 ruling on a motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668,

16 688 (9th Cir. 2001).  A district court may take notice of facts not subject to reasonable dispute that

17 are "capable of accurate and ready determination by resort to sources whose accuracy cannot

18 reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331,

19 333 (9th Cir. 1993).  "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250

20 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may

21 also consider "documents whose contents are alleged in a complaint and whose authenticity no

22 party questions, but which are not physically attached to the pleading" without converting a

23 motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*,

24 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*,

25 307 F.3d 1119 (9th Cir. 2002).  The court need not accept as true allegations that contradict facts

26 which may be judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388

27 (9th Cir. 1987).

28

## III. DISCUSSION

### A. Request for Judicial Notice

As an initial matter, Defendants ask that the Court take judicial notice of the following documents: 1) Excerpts from the Reporter's Transcript of Proceedings in *People v. Joaquin Ciria*, San Francisco Superior Court Case No. 137440; and 2) Government Tort Claim forms for Plaintiff Yojana Paiz (Claim No. 23-00580) and Pedro Ciria (Claim No. 23-00581). (Def.'s Req. for Judicial Notice, "RJN," Dkt. No. 27.)

Plaintiffs do not oppose the request for judicial notice. Nonetheless, the Court denies the request regarding Exhibit 1, because the transcript of the 1991 trial is not relevant to the pending motion, which concerns pretrial conduct.

Exhibit 2 are Plaintiffs' government tort claim forms. Under the incorporation by reference doctrine, the Court may consider an extrinsic document that the plaintiff refers to extensively or that "forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Plaintiffs do not oppose the claims forms, which they filed to satisfy the administrative exhaustion requirement, and to which they cite to in the complaint, so the Court finds that they are incorporated by reference.

Accordingly, Defendants' request for judicial notice is granted in part and denied in part.

### B. Motion to Dismiss

#### i. Substantive Due Process Claim (§ 1983)

Defendants argue that Plaintiffs' substantive due process claim fails for three reasons. First, that the courts do not recognize family member's right to sue based on wrongful conviction that incidentally interferes with a familial relationship. (Defs.' Mot. at 5.) Second, that Defendants' conduct does not shock the conscience. (Defs.' Mot. at 9.) Third, that Defendants are entitled to qualified immunity. (Defs.' Mot. at 11.) The Court will address each argument below.

##### a. Standing

Defendants initially sought to dismiss both plaintiffs' federal claims on the grounds that the Ninth Circuit has not recognized a child's or unmarried spouse's right to sue under the Fourteenth Amendment based on the impact a wrongful conviction may have on the right to

6

familial association. (*See* Defs.' Mot. at 5.)  Plaintiffs cited to binding legal authority in their opposition, and Defendants conceded in their reply that the Ninth Circuit recognized that this right does exist within the confines of the parent-child relationship, such that Plaintiff Ciria's claim may be viable. (*See* Defs.' Reply at 2 (citing *Lee v. City of Los Angeles,* 250 F. 3d 668, 685-86 (9th Cir. 2001).)

Defendant maintains that such claims do not extend to unmarried, romantic partners. (Defs.' Reply at 2.)  The United States Courts of Appeals are split, and, while the Ninth Circuit has not recognized this right, at least one court in this district has allowed such a claim to proceed. *Garcia v. Cnty. of Napa*, No. 21-CV-03519-HSG, 2022 WL 110650, at *3 (N.D. Cal. Jan. 12, 2022) (girlfriend had standing for loss of familial association claim); *see also Peck v. Montoya,* 51 F.4th 877, 893 (9th Cir. 2022) (While the Ninth Circuit has not held that a spouse can assert a familial association claim, "other courts of appeals have reached conflicting conclusions." The Ninth Circuit ultimately refrained from making any determination.)  Defendants argue that the Ninth Circuit's decision to refrain from recognizing a spouse's right to assert this claim should be instructive, since an unmarried partner should not enjoy greater legal rights. (Defs.' Reply at 3.) The Court agrees.

Marriage confers legal rights beyond those enjoyed by purely romantic relationships. While Plaintiff Paiz cohabitated with Joaquin, had child with him, and maintained their romantic relationship for several years after his conviction, they never legally married, and his subsequent incarceration did not prevent them from doing so.  Furthermore, the *Garcia* case is factually distinguishable, as the "de facto wife" lived with the decedent and their three children for over 20 years. *Garcia*, 2022 WL 110650, at *3.  While having no precedential value, the Ninth Circuit recently issued an unpublished memorandum in which the panel found that the spouse's right to familial association was not clearly established, thereby entitling the defendants to qualified immunity. *See Hampton v. California*, No. 22-15481, 2023 WL 6443897, at *1 (9th Cir. Oct. 3, 2023).  Despite ample opportunity, the Ninth Circuit has not extended a Fourteenth Amendment familial association claim to a married spouse, and the Court declines to extend a legal right to an unmarried partner that a legal spouse does not clearly enjoy.  Thus, Plaintiff Paiz lacks standing to

1  assert a familial association claim under the Fourteenth Amendment. At the hearing, Plaintiffs
2  requested leave to amend to allege a familial association claim under the First Amendment. Thus,
3  Plaintiff Paiz's § 1983 claim is dismissed with leave to amend.
4  Accordingly, the Court finds that Plaintiff Ciria has standing to assert a familial association
5  claim under the Fourteenth Amendment. Plaintiff Paiz's claim is dismissed, as she does not have
6  standing to assert a claim under the Fourteenth Amendment, but she is granted leave to amend to
7  allege a claim under the First Amendment.[2]

          b.   <u>Whether the alleged conduct was conscience shocking.</u>

9  Defendants argue that even if Plaintiffs have standing to assert the federal claim, they fail
10 to meet their burden of showing that the conduct "shocks the conscience." (Defs.' Mot. at 9.)
11 The standard of culpability for a due process right to familial association claim is one that
12 "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Cnty. of
13 Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). A defendant acts with deliberate indifference in
14 the context of deprivations of familial relationships when they "recognize the unreasonable risk
15 and actually intend to expose the [victim] to such risks without regard to the consequences to the
16 [victim]." *Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021).
17 Defendants contend that "no constitutional violation occurred because the allegations in the FAC
18 do not describe any actions that are intolerable or unaccepted law enforcement practices in the
19 context of a criminal investigation." (Defs.' Mot. at 9.)
20 In opposition, Plaintiffs argue that Defendants violated Joaquin's rights "systematically
21 and deliberately over a long period of time by engaging in malicious prosecution, conspiracy to
22 violate his civil rights, by withholding exculpatory evidence, and fabricating evidence, resulting in
23 Mr. Ciria being incarcerated for three decades." (Pls.' Opp'n at 15 (citing FAC, ¶¶ 92-101).)
24 The Court agrees with Plaintiffs that this conduct, if true, is intolerable and unacceptable,
25 and surely "shocks the conscience." The Court denies the motion on these grounds.
26 //

---

[2] For clarity in the pleadings, Plaintiffs are asked to allege the First and Fourteenth Amendment claims as separate causes of action.

          c.   Qualified Immunity

Defendants contend that the federal claim should be dismissed because the individual defendants are entitled to qualified immunity. (Defs.' Mot. at 11.) Defendants argue that the officers are entitled to qualified immunity because there was no constitutional violation and because Plaintiffs' substantive due process right to be free from interference in familial association was not clearly established in 1990 and 1991. *Id.* at 11-12.

In opposition, Plaintiffs argue that the loss of familial association derives from Joaquin's § 1983 claim, so what matters is whether Defendants were on notice that their conduct was unconstitutional as to the underlying claim. (Pls.' Opp'n at 10.) Indeed, the Ninth Circuit denied qualified immunity for a police detective on the grounds that it was clearly established that he had to disclose exculpatory evidence, before finding that the children could proceed with their dependent claims for loss of familial association for the time their mother spent in prison. *See Mellen v. Winn*, 900 F.3d 1085, 1103 (9th Cir. 2018).

Thus, based on the allegations that the individual defendants pressured witnesses to provide false testimony leading to Joaquin's arrest and conviction, the Court finds that the officers are not entitled to qualified immunity.

Accordingly, the motion is denied as to the § 1983 claim.

### ii. Emotional Distress Claims

Plaintiffs second and third causes of action are for intentional infliction of emotional distress and negligent infliction of emotional distress. (FAC ¶¶ 102-115.)

          a.   California Government Code § 821.6 limits state law claims

Defendants argue that Plaintiffs' state law claims are barred by the "absolute immunity" conferred by California Government Code § 821.6. (Defs.' Mot. at 12.) Alternatively, Defendants argue that any damages are limited to the few days between Joaquin's arrest and arraignment. (Defs.' Reply at 7.)

In opposition, Plaintiffs note that the same argument was made in Joaquin's underlying case, and it was already rejected by the undersigned. (Pls.' Opp'n at 16 (citing J.C. Dkt. No. 31 at 12:10-14:2).) In reply, Defendants explained that Plaintiffs mistakenly relied on the May 15, 2023

9

1   order, which was later reconsidered based *Leon v. County of Riverside*, 14 Cal. 5th 910 (2023).

2   (Defs.' Reply at 7.) Defendants are correct, and Plaintiffs conceded this fact at the hearing.

3         Indeed, in the September 26, 2023 order granting reconsideration in part, the court found

4   that, under *Leon*, § 821.6 conferred immunity on the officers for Joaquin's post-arraignment

5   incarceration. (*See* J.C. Dkt. No. 62 at 2.) Thus, the officers are not immune from liability for

6   Joaquin's false arrest and imprisonment that occurred prior to arraignment. *Id.* (citing *Leon,* 14

7   Cal. 5th at 919.)

8         Accordingly, and consistent with the reconsideration order in the related case, the Court

9   grants the motion to dismiss in part, and finds that § 821.6 confers immunity from the state law

10  claims post-arraignment, such that Defendants are only liable for the short time-period between

11  Joaquin's arrest and his arraignment in 1990.

12        b.   State law claims are not time-barred.

13        Defendants argue that Plaintiffs' state law claims are time-barred, because they are

14  premised on his false imprisonment and pre-arraignment confinement in 1990. (Defs.' Mot. at 15.)

15  The Court disagrees. California Government Code § 911.2 requires plaintiffs to present

16  government claims "not later than six months after the accrual of the cause of action." Cal. Gov't

17  Code § 911.2(a). As Plaintiffs argue in their opposition, claims related to Joaquin's false

18  imprisonment did not accrue until his conviction was vacated in 2022. (*See* Pls.' Opp'n at 17.) "It

19  is settled that a cause of action for false imprisonment accrues on the person's release from

20  incarceration." *Torres v. Dep't of Corr. & Rehab.*, 217 Cal. App. 4th 844, 848, 158 Cal. Rptr. 3d

21  876, 879 (2013) (citing *Scannell v. County of Riverside*, 152 Cal. App.3d 596, 606 (1984)).

22  Joaquin was released from custody on April 20, 2022, and Plaintiffs filed their government claim

23  on October 17, 2022 – a few days before the six-month deadline. (*See* RJN, Ex. 2.) Thus,

24  Plaintiffs' state law claims are not time-barred.

25        c.   Intentional Infliction of Emotional distress claim

26        The second cause of action is for intentional infliction of emotional distress. (FAC ¶¶ 102-

27  108.) Regarding Plaintiff Ciria, Defendants argue that he was only two months old at the time of

28  Joaquin's arrest and cannot plausibly allege the necessary emotional distress to state a claim.

(Defs.' Mot. at 17-18.)  To recover under a bystander theory, the plaintiff must contemporaneously and meaningfully understand the causal connection between the defendants' harmful conduct and his father's injury. *See Downey v. City of Riverside,* 90 Cal. App. 5th 1033, 1054 (2023).  Given that Plaintiffs may only recover damages post-arrest and pre-arraignment, Plaintiff Ciria has not alleged facts to suggest that he experienced emotional distress contemporaneously and that he understood what was happening at the time of Joaquin's arrest.  While it may defy common sense that a two-month-old child could understand that his father's absence was due to police fabricating evidence, that is not a determination the Court will make at the pleadings stage.  Therefore, Plaintiff Ciria's claim is dismissed with leave to amend.  He should not amend if he cannot allege in good faith facts to support the allegation that he contemporaneously and meaningfully understood the situation in March 1990.

Regarding Plaintiff Paiz, Plaintiffs conceded that her claim was not adequately pled, and they requested leave to amend to plead the elements set forth in California Civil Jury Instruction No. 1600.  The Court notes that, unlike claims for negligent infliction of emotional distress, California law does not require a plaintiff to prove a special relationship to prevail on a claim of intentional infliction of emotional distress so long as the conduct is extreme and outrageous. *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*, 39 Cal. App. 5th 995, 1009, 253 Cal. Rptr. 3d 1, 15 (2019).

Thus, the second cause of action is dismissed with leave to amend.

d. Negligent Infliction of Emotional Distress ("NIED") Claim

The third cause of action is for negligent infliction of emotional distress. (FAC ¶¶ 109-115.)  Negligent infliction of emotional distress is not an independent tort.  Rather, it is a negligence claim, and the traditional elements apply. *Burgess v. Superior Ct.*, 2 Cal. 4th 1064, 1072, 831 P.2d 1197 (1992).  The allegations in the complaint, however, consist of intentional conduct, such as witness intimidation and the fabrication of evidence.  Plaintiffs do not cite to any facts that suggest negligence.  At the hearing, Plaintiffs conceded that they do not have a factual basis to support a claim for negligent infliction of emotional distress, so the third cause of action is dismissed without leave to amend.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. Specifically, the first cause of action under § 1983 is dismissed as to Plaintiff Paiz, but she is granted leave to amend to allege a loss of familial association under the First Amendment. The second cause of action for intentional infliction of emotional distress is dismissed with leave to amend, and it is limited temporally by California Government Code § 821.6 to the time period between Joaquin Ciria's arrest and arraignment. The third cause of action for negligent infliction of emotional distress claim is dismissed with prejudice. The motion is denied in all other respects.

Plaintiffs shall file an amended complaint within 14 days of this order.

IT IS SO ORDERED.

Dated: February 22, 2024

KANDIS A. WESTMORE
United States Magistrate Judge